David C. Neu, WSBA #33143
Brian T. Peterson, WSBA #42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Timothy W. Dore
Chapter 11
Hearing Location: Seattle, Room 8106
Hearing Date: June 13, 2014
Hearing Time: 9:30 a.m.
Response Date: June 6, 2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

In re:

SEATTLE GROUP LIMITED,

                Debtor.

In re:

CONDOR DEVELOPMENT, LLC,

                Debtor.

No. 12-13263 (Jointly Administered)

Chapter 11

No. 12-13287

Chapter 11

EASTWEST BANK'S OBJECTION TO DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION DATED MAY 12, 2014

EastWest Bank ("EWB" or "Lender"), a secured and unsecured creditor in this case, hereby files this objection to the Debtors' Fourth Amended Joint Plan of Reorganization (the "Plan"). This objection is based on the facts and authority contained herein, together with the records and other documents on file.

## I. BACKGROUND

Seattle Group Limited ("Seattle Group") and Condor Development, LLC ("Condor") filed separate voluntary petitions under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") twenty-six months ago, on March 30, 2012 ("the "Petition

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 1
K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 1 of 20

Date"). Condor and Seattle Group are collectively referred to as the "Debtors."

EWB is the holder of three promissory notes executed by Condor in favor of Washington First International Bank ("WFIB") in the total principal amount of $7,965,000. Declaration of Vincent Chan in Support of EastWest Bank's Motion for Relief from the Automatic Stay (hereafter, "Decl. Chan"), Dkt. No. 74 ¶¶ 3-4; Declaration of Vincent Chan in Support of Objection to Confirmation of Plan, (the "Chan Decl.") Exs. A-B.. EWB is the successor-in-interest to Washington First International Bank ("WFIB") under the Purchase and Assumption Agreement Whole Bank between the Federal Deposit Insurance Corporation as receiver for WFIB and EWB. *Id.* at ¶ 2. Condor is in default under the promissory note dated November 15, 2005 (the "First Note") for failure to pay all outstanding indebtedness by March 31, 2012. *Id.* at ¶ 11. The principal amount of indebtedness owed to Lender as of the petition date is $785,957.39. As of March 31, 2012, the total loan balance owed to EWB under the First Note is no less than $792,632.21. *Id.*

The First Note is secured by real property located at 19266 28th Ave South, SeaTac, Washington 98188 (the "Parking Lot"), as evidenced by a certain Deed of Trust in favor of WFIB and recorded in King County on November 28, 2005, under King County Recorder's No. 20051129002763. *Id.* at ¶ 6. The First Note is also secured by that certain Assignment of Leases and Rents, dated November 15, 2005, and recorded under King County Recorder's No. 20051129002764 on November 29, 2005, pursuant to which Lender asserts right, title, and interest in all leases, subleases, licenses, guaranties, or other agreements for the use occupancy of the property, as well as all rents, issues, parking charges, and profits of the property. *Id.* at ¶ 7.

Condor is also in default under the promissory note dated February 13, 2007 (the Second Note") for failure to pay all of the outstanding indebtedness by November 16, 2010. Chan Decl., ¶3. The amount of indebtedness owed to Lender under the Second Note as of the petition date is $256,727.96. The Second Note is secured by a junior Deed of Trust recorded in King County on February 28, 2007, under King County Recorder's No. 20070228003506.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 2

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 2 of 20

Condor is also in default under the promissory note dated January 29, 2008 (the "Third Note") for failure to pay all outstanding indebtedness by March 31, 2012. *Id.* at ¶ 11. The principal amount of indebtedness owed to Lender under the Third Note as of the petition date is $8,275,039.35. As of March 31, 2012, the total amount owing to EWB under the Third Note was $8,382,110.07.

The Third Note is secured by the Debtors' interest in real property located at 19260 28th Ave South and 19333 Pacific Hwy S., SeaTac, WA 98188[1] (the "Hotel Property" and together with the Parking Lot, the "Properties") as evidenced by that certain Deed of Trust in favor of WFIB and recorded in King County on January 31, 2008, under King County Recorder's No. 20080131000687. *Id.* at ¶ 9. The Third Note is also secured by that certain Assignment of Leases and Rents, dated January 29, 2008, and recorded under King County Recorder's No. 20080131000688 on January 31, 2008. Pursuant to that Assignment of Leases and Rents, Lender holds the right, title, and interest in all rents, revenue income, leases, royalties, accounts receivable, cash, or security deposits, profits and proceeds from the Hotel Property. *Id.* at ¶ 10.

The First Note, the Second Note, the Third Note, the agreements to change terms of the notes referenced herein, the assignments of leases and rents dated November 15, 2005 and January 29, 2008, the deed of trust with King County Recording No. 20080131000687, the deed of trust with King County Recording No. 20070228003506, and the deed of trust with King County Recording No. 20051129002763 are collectively referred to as the "Loan Documents." The First Note, Second Note, and the Third Note are collectively referred to as the "Notes." The information set forth above regarding the Notes, and the corresponding collateral securing the Debtors' obligations under the Notes is summarized in the below table.

---

[1] The Seattle Group, Ltd. has record title to 19333 Pacific Hwy S., and Condor Development, LLC, is in title to 19260 28th Ave. South.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 3

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 3 of 20

| Loan No. | Deed of Trust (King County recording No.) | Note Principal Amount | Outstanding Balance as of March 31, 2012 | Note Date | Collateral |
|---|---|---|---|---|---|
| 8037170003 | 20051129002764 | $865,000 | $792,632.21 | 11/15/2005 | The "Parking Lot," 19266 28th Ave S., SeaTac, WA 98188; Assignment of Leases and Rents dated 11/15/2005 |
| 8037170004 | 20070228003506 | $250,000 | $256,727.96 | 2/13/2007 | The "Parking Lot," 19266 28th Ave S., SeaTac, WA 98188 |
| 8037170005 | 20080131000687 | $8,350,000 | $8,382,110.07 | 1/29/2008 | The "Hotel Property," 19260 28th Ave S and 19333 International Blvd., SeaTac, WA 98188; Assignment of Leases and Rents dated 1/29/2008 |

On September 24, 2012, EWB filed a motion for relief from the automatic stay [Dkt. No. 72] ("Initial Relief from Stay Motion"), alleging that EWB's interest in the Properties is not adequately protected, there is no equity in the Properties, and that the Properties are not necessary for an effective reorganization. The Debtors requested a continuance of the EWB's Initial Relief from Stay Motion to allow for the formal appointment of a conservator for the Debtor's owner, Mr. Ciaramella, and to allow the conservator to evaluate the assets of Mr. Ciaramella, including the Properties. On October 19, 2012, the Court continued the Initial Relief from Stay Motion to November 11, 2012. EWB thereafter continued its Initial Motion for Relief from Stay a number of times until, on April 23, 2013, EWB withdrew the motion. EWB withdrew the Initial Relief from Stay Motion because on April 19, 2013, the Debtors filed their First Amended Joint Plan of Liquidation [Dkt. No. 150] (the "Plan of Liquidation") and Disclosure Statement [Dkt. No. 151].

The Debtors' Plan of Liquidation provided for the sale of the Properties after an appropriate period of marketing with a new broker put in place by the Conservator that replaced the Debtors' previous broker. The Plan of Liquidation further provided that EWB would retain its liens on the Properties, with interest accruing at the rate of Prime + 1% per annum with a minimum rate of 5%

EASTWEST BANK'S OBJECTION TO CONFIRMATION OF DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION DATED MAY 12, 2014 - 4

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 4 of 20

per annum. The Debtors proposed to pay EWB $40,069 on the 15th of each month, and the balance of the amounts owed to EWB "to be paid or satisfied in full from Sale Proceeds after payment of the Class 4 Allowed Secured Claims." *See* Article VI.B.2 of Disclosure Statement, Dkt. No. 151. Over the course of the next six months, the Debtors failed to obtain confirmation of their Plan of Liquidation.

Although the Debtors failed to confirm their Plan of Liquidation, the Debtors' new broker continued to market the Properties for sale, without success. Although there have been prospective sales that have not closed, each purchase was for a price insufficient to pay secured and priority unsecured creditors of the estate. Although EWB agreed, with respect to prospective sales at $9.5 million and $9 million, to a substantial carveout to pay administrative claims, priority unsecured claims, and a portion of the unsecured claims, the sales never closed. The latest offer, as set-forth in the Debtors' Third Amended Disclosure Statement (the "Disclosure Statement"), was for $7.5 million.

Finally, in February, 2014, EWB renewed its motion for relief from the automatic stay of 11 U.S.C. §362. In response to the Motion, the Debtors did not dispute the assertion that they lack equity in the Properties, but argued that they were necessary for an effective reorganization. [Dkt. No. 205]. On April 9, 2014, the Court granted EWB's motion for relief from stay, provided, however, that no foreclosure could be scheduled before July 31, 2014. The Court allowed the Debtors, in the meantime, to file and seek confirmation of an operating plan. On May 13, 2014, the Debtors filed the Plan, which EWB asserts, as set-forth below, does not meet the requirements of the Bankruptcy Code and is nonconfirmable.

## II. OBJECTION TO PLAN

A. <u>The Debtors do not Have an Impaired Accepting Class.</u>

11 U.S.C. §1129(a)(10) provides that if a class of claims is impaired under a plan, such plan may only be confirmed if "at least one class of claims that is impaired under the plan has accepted

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 5

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 5 of 20

the plan, determining without including any acceptance of the plan by any insider." The Debtors' Plan contains eight separate classes of creditors and interests holders, of which five are deemed impaired. The classes are as follows:

- Class 1 - administrative expense claims (not entitled to vote)
- Class 2 - priority tax claims under §507(a)(8) (not entitled to vote)
- Class 3 - priority wage claims (unimpaired and debtors do not believe there are any)
- Class 4 - allowed secured real property tax claims of King County (deemed impaired)
- Class 5 - allowed secured claim of EWB (impaired)
- Class 6 - allowed general unsecured claims (impaired)
- Class 7 - allowed deficiency claim of EWB (impaired)
- Class 8 - allowed equity interests (deemed impaired)

Plan at 14-17. EWB has voted against the Plan. Thus, the Plan can only be confirmed if Class 4, 6, or 8 vote for the Plan. As explained below, Class 4 and 8 are not entitled to vote, despite their alleged impairment.

   1. <u>The single Class 4 claimant is no longer a Creditor.</u>

Under the Deeds of Trust that secure each of the Loans, EWB has the right to satisfy property taxes that have not been paid by the Debtors. On page 4 of each Deed of Trust, there is provision that provides:

> **Lender's Expenditures** . . . . if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is requires to discharge or pay . . . Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate including but not limited to discharging or paying all taxes . . . at any time levied or placed upon the Property.

On June 6, 2014, EWB exercised its rights under the Deeds of Trust and paid the $536,916.08 in delinquent real estate taxes.

Even if EWB had not paid the taxes, Class 4 would be ineligible to vote. Under the terms of the Plan, the Class 4 claimant would be paid its claim, in installments, over five years from the Effective Date. The law is clear, with respect to priority tax claims entitled to preferential treatment under 11 U.S.C. §1129(a)(9)(C) (i.e., §507(a)(8) claims), that such claims are not an impaired class

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 6

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD Doc 238 Filed 06/06/14 Ent. 06/06/14 16:26:44 Pg. 6 of 20

that can bind other truly impaired creditors in a cramdown. *See, e.g., In re Bryson Props., XVIII*, 961 F.2d 496, 501 n. 8 (4th Cir.1992); *In re Western Asbestos Co.*, 313 B.R. 832, 840 n. 11 (Bankr. N.D. Cal., 2003) ("[c]laims entitled to priority under . . . 507(a)(8) . . . are not classified because their rights may not be impaired. The Bankruptcy Code specifies how they must be treated in a plan unless the holder of the claim affirmatively agrees to a less favorable treatment."). Courts that have addressed the same issue with respect to secured tax claims, afforded preferential treatment under §1129(a)(9)(D)[2], have likewise found that such claims are not impaired or entitled to vote. *See, e.g., In re The Capital Centre, LLC,* 2013 WL 4510248 (Bankr. E.D.N.C. , 2013) (holding secured tax claimants entitled to treatment under §1129(a)(9)(D) are not entitled to vote)[3]. Because §1129(a)(9)(D) requires that secured tax claims be given the same treatment as all other priority tax claims, courts that have examined the issue have held that such claims should be treated equally when it comes to purposes of voting and cramdown. *See, e.g., In re Mangia Pizza Investments, L.P.*, 480 B.R. 669, 678-679 (Bankr. W.D. Tex, 2012) ("the better reasoning suggests that a secured tax claim should not be treated as a "class" . . . . [t] he Court agrees that given the express statutory treatment afforded tax claims, tax claims should not be given the ability to vote if the taxing authority accepts treatment less than that allowed under section 1129(a)(9)(C) and (D). In doing so, creditors who are not given statutory rights will not have their votes diluted.").

Secured tax claims are afforded, under §1129(a)(9)(D) of the Bankruptcy Code, preferential treatment. There is no basis to allow a secured tax creditor, which will retain its lien and be paid in

---

[2] §1129(a)(9)(D) was added by BAPCPA, and provides that secured claims which would otherwise meet the description of an unsecured claim of a governmental unit under §507(a)(8), but for the secured status, must be paid in the same manner and the same time as claims falling within the purview of §1129(a)(9)(C).

[3] The Court in *The Capital Center* distinguished *In re Greenwood Point, LP*, 445 B.R. 885 (Bankr. S.D. Ind., 2011), a case which reached the opposite conclusion, emphasizing that the plan in *Greenwood Point* released the taxing authority's lien, proposing to revest the property in the Debtor free and clear. The Debtors' Plan provides that the King County Taxing Authority will retain its lien. *See, also, In re Val-Mid Associates, LLC*, 2013 WL 139278 (Bankr. D. Ariz, 2013)(distinguishing *Greenwood Point*).

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 7

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 7 of 20

full with 12% interest, to vote and be used to cramdown the Plan on EWB.

        2.      <u>There is no basis to separately classify EWB's deficiency claim.</u>

The Debtors have separately classified the unsecured deficiency claim of EWB in an apparent effort to gerrymander a separate general unsecured class for cramdown purposes. The Debtors' apparent basis for the separate classification is the existence of separate guarantees of the Debtors' obligations to EWB by Joseph and Laura Ciaramella.

While EWB recognized the Ninth Circuit BAP's decision in *In re Loop 76*, LLC, 465 B.R. 525 (9th Cir. BAP 2012), which is on appeal to the Ninth Circuit Court of Appeals, the present matter does not fall within the scope of its holding. As courts within the Ninth Circuit have acknowledged, a separate guarantee does not form the basis for separate classification if the guarantors are insolvent. As recently statement by one court, "the bare existence of a guaranty cannot by itself be determinative unless there is also a showing that the guarantors are solvent in a meaningful way." *In re NNN Parkway 400 26*, LLC, 505 B.R. 277, 284 (Bankr. C.D. Cal., 2014) (finding that separate guarantee was not basis for separate classification). *See, also, In re 4th Street East Investors, Inc.*, 2012 WL 1745500 at*4-5 (Bankr. C.D. Cal., 2012) (same).

On May 30, 2014, Michel Seibert, the court-appointed conservator for Joseph Ciaramella testified that the guarantors, Joseph and Laura Ciaramella, are insolvent from a balance sheet perspective:

Q. Do you have an understanding of what the term balance sheet insolvent" means?

A. Yes.

Q. Can you explain to me your understanding of what "balance sheet insolvent" is?

A. Insolvency?

Q. Either "balance sheet solvent" or "balance sheet insolvent."

A. Insolvent would be when your net worth is less than zero.

Q. Based on your understanding of the finances of the Ciaramellas, is it your opinion that

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 8

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD   Doc 238   Filed 06/06/14   Ent. 06/06/14 16:26:44   Pg. 8 of 20

they are balance sheet solvent or balance sheet insolvent?

A. Looking at the balance sheets, I believe the net worth would show up as zero or less than zero.

Declaration of David C. Neu, Exhibit A at 43:1-17.

The fact EWB has a personal guarantee of the Debtors' obligations is a distinction without a difference. The Debtors have made no showing that the guarantees are worth the paper they are printed on. In fact, they have testified under oath that the guarantees are essentially worthless.

       3.    <u>Class 6 was artificially impaired to confirm a plan in violation of 11 U.S.C. §1129(a)(3).</u>

The creation of an impaired class in "an attempt to gerrymander a voting class of creditors is indicative of bad faith" for purposes of § 1129(a)(3). *In re Windmill Durango Office, LLC*, 481 B.R. 51, 68 (9th Cir. BAP, 2012). The Debtors have indicated that Class 6 consists of three unsecured claims Approximately $8,000. The Claims Register shows only one other potential unsecured - claim no. 6 filed by Choice Hotels, the Debtors' franchisor. The Debtors, however, assumed the franchise agreement (the "Franchise Agreement") with Choice Hotels pursuant to an order entered on July 17, 2012. [Dkt. No. 62]. Per the motion and order authorizing the assumption, the Debtors were obligated to cure the existing defaults under the Franchise Agreement by making amortized payments of the alleged arrearages. It is unclear whether the Debtors have met their cure obligations, but to the extent they has not, Choice Hotels holds an administrative claim, and is not entitled to vote. *In re Norwegian Health Spa, Inc.*, 79 B.R. 507, 509 (Bankr. N.D. Ga., 1987) ("the claim arising from the debtor's breach of the obligation to cure must be deemed an administrative expense"); *In re Monroe Well Service, Inc.*, 83 B.R. 317, 321 (Bankr. E.D. Pa. 1988) ("any duty to cure a prepetition default becomes a first priority administrative obligation of the estate") *citing LJC Corp. v. Boyle*, 768 F.2d 1489, 1494 n. 6 (D.C. Cir., 1985). Moreover, per the Franchise Agreement attached to the proof of claim filed by Choice Hotels, Joseph and Laura Ciaramella are jointly and

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 9

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 9 of 20

severally liable with the Debtors. Accordingly, in the event the Court was to find that Choice Hotels holds an unsecured, as opposed to administrative claim, it must be classified in the same class as EWB's deficiency claim.

In sum, the Debtors have more than sufficient cash to pay the approximately $10,000 in Class 6 claims, in full, on the Effective Date. The artificial impairment of Class 6 creditors, as opposed to payment in full, constitutes bad faith on the part of the Debtors in violation of 11 U.S.C. §1129(a)(3), and, accordingly, to the extent the sole creditor in Class 6 votes, and the Debtors attempt to use that vote to cramdown the Plan on EWB, the Plan should not be confirmed. Moreover, to the extent Choice Hotels attempts to vote as a Class 6 creditor, its vote should be disallowed.

4.   Class 8's votes cannot be counted.

11 U.S.C. §1129(a)(10) provides that the acceptance of a plan by an insider cannot be counted for purposes of determining whether a class as accepted the plan.

Condor Development is a limited liability company with two members, Joseph Ciaramella and Laura Ciaramella, owning 51% and 49% respectively. *See* Statement of Financial Affairs [Dkt. No. 1]. As an initial matter, a limited liability company fits within the scope of the term "corporation" for the purposes of the Bankruptcy Code's definition of an insider. *In re Parks*, 503 B.R. 820, 827-828 (Bankr. W.D. Wa., 2014) (holding, with lengthy analysis, that a limited liability company is a corporation under 11 U.S.C. §101(9)). The term "insider" as defined in 11 U.S.C. §101, in the case of a corporation, includes the following persons: "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; . . . (vi) relative of a general partner, director, officer, or person in control of the debtor." Courts have held that a managing member is analogous to a director of a corporation for the purposes of determining insider status. *See, e.g., In re wolverine, Proctor & Schwartz, LLC,* 447 B.R. 1, 32 (Bankr. D. Mass., 2011) (finding managing member of limited liability company to be a statutory insider); *Longview Aluminum, LLC v. Brandt,*

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 10

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 10 of 20

431 B.R. 193, 196-197 (Bankr. N.D. Ill., 2010) (finding managing member to be an "insider" irrespective of whether managing member exercised actual control). Mr. Ciaramarella is also an affiliate of the Debtors, constituting a statutory insider. 11 U.S.C. §101(2); 11 U.S.C. §101(31). Mr. Ciaramella, the managing member and affiliate o the Debtors, and the person in control of Condor Group is, therefore, an "insider" as is his wife, Laura per 11 U.S.C. §101(31)(B)(vi).

Seattle Group, Ltd., per the Disclosure Statement, is a limited partnership.[4] Condor ("Condor Partnership"), a California general partnership, holds 90% of the interest in Seattle Group, and is therefore an "affiliate" of Seattle Group. 11 U.S.C. §101(2). Joseph and Laura Ciaramella are insiders of Condor Partnership. 11 U.S.C. §101(2); §101(31)(E) (Joseph and Laura are affiliates of Condor Partnership, and, therefore are insiders). Accordingly, Mr. Ciaramella is an insider of Seattle Group, as is his wife, Laura. 11 U.S.C. §101(35)(E) (insider of affiliate is an insider).

Because Mr. Ciaramella, Ms. Ciaramella, and Condor Partnership are all statutory insiders of the Debtors, their vote cannot be counted for determining acceptance of the Plan.

B. The Plan is not Fair and Equitable to EWB.

11 U.S.C. §1129(b) provides in relevant part as follows:

> (1) Notwithstanding section 510 (a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

In order for the treatment of a secured claim to be fair and equitable, the plan must provide that:

- that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the

---

[4] Seattle Group's Statement of Financial Affairs states that the equity interests in Seattle Group are held Joseph Ciaramella (51%) and Laura Ciaramella (49%). It is unclear whether the mistake is in the Disclosure Statement or Statement of Financial Affairs, however as set-forth herein, Mr. and Mrs. Ciaramella are insiders in either event.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 11

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 11 of 20

allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; or

- for the sale, subject to section 363 (k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

- for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. §1129(b). The Debtors' plan is not fair and equitable in accordance with 11 U.S.C. §1129.

    1.    <u>The proposed interest rate is inadequate and does not provide EWB with the present value of its claim.</u>

As set-forth in the accompanying Declaration of John Cate, EWB is entitled to an interest rate of at least 7.65 percent over the prime rate because the Debtors are poor credit risks and EWB is thinly collateralized.

A plan cannot be confirmed over the objection of an impaired class of secured claims unless each creditor in that class receives the present value of it claim in deferred cash payments. §1129(b)(2)(A)(i)(II). A calculation of the present value of deferred payments hinges on the interest rate applied to the claim. *In re Red Mountain Mach. Co.*, 471 B.R. 242, 250 (Bankr. D. Ariz., 2012). In determining a fair and equitable cramdown interest rate that will ensure that a secured creditor receives the present value of its claim, a court has two options: (1) determine the market interest rate for similar loans in the region, or (2) utilize a formula. *Id.* (citing *In re Fowler*, 903 F.2d 694, 696 (9th Cir. 1990)). Under the first approach, testimony is taken regarding current rates for loans for the length of time involved secured by the type of property involved. *Fowler*, 903 F.2d at 697. This approach is of limited utility because a market for a coerced loan such as that being crammed down is often nonexistent. *See In re Gramercy Twins Assocs.*, 187 B.R. 112, 123 (Bankr. S.D.N.Y. 1995).

Under the formula approach, which must be used when no actual market exists, the court

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 12

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 12 of 20

begins with a base rate, usually the prime rate, and then makes an upward risk factor adjustment, based on the risk of default and the nature of the security. *Fowler*, 903 F.2d at 697; *see, also, Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004) (plurality opinion) (in Chapter 13 case, "appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan"). A court utilizing the formula approach must make findings regarding: (1) how it assesses the risk of default, (2) how it assesses the nature of the security, (3) what market rates exist for the type of loan at issue, and (4) which facts reduce or heighten the risks associated with this debtor. *In re Linda Vista Cinemas, LLC*, 442 B.R. 724, 751 (Bankr. D. Ariz., 2010) (citing *Fowler*, 903 F.2d at 699).

In using the formula approach to calculate cramdown interest, courts have determined that a risk factor adjustment of at least three to five percentage points over the base rate is fair and equitable to secured creditors in Chapter 11 cases. *See, e.g., In re Greenwood Point, LP*, 445 B.R. 885, 918-19 (Bankr. S.D. Ind., 2011) (3% adjustment); *In re Nw. Timberline Enters., Inc.*, 348 B.R. 412, 431-35 (Bankr. N.D. Tex. 2006) (5.75% adjustment); *In re Value Recreation, Inc.*, 228 B.R. 692, 696-98 (Bankr. D. Minn. 1999) (5% adjustment); *Gramercy Twins*, 187 B.R. at 122-24 (at least 4.25%); *In re Woodmere Investors LP*, 178 B.R. 346, 361-62 (Bankr. S.D.N.Y. 1995) (3.5% adjustment); *In re Villa Diablo Assocs.*, 156 B.R. 650, 653-55 (Bankr. N.D. Cal. 1993) (3% adjustment).

Under the Plan, the Debtors propose to pay interest to EWB at 5.25% per annum, or .25% above the contractual rate of interest.[5] This proposed interest rate in no way reflects the risk that is inherent in the Plan. EWB will, in essence, be making a coerced loan to an entity, taking back collateral with a 100% loan-to-value ratio. The borrowers will be the entities that have been in default under the existing loans for over two years, defaulted under their franchise agreement, and

---

[5] As discussed below, the Debtor's monthly payments are insufficient to cover even the accruing interest, accordingly, interest will accrue until such time as the Debtors sell the Properties or on the fifth anniversary.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 13

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 13 of 20

have modest positive cash flow.

2. <u>The treatment of EWB's claim does not satisfy 11 U.S.C. §1129(b)(2)(A)(ii).</u>

In addition to not satisfying 11 U.S.C. §1129(b)(2)(A)(i), the treatment of EWB's claim does not satisfy 11 U.S.C. §1129(b)(2)(A)(ii), which provides that treatment may be fair and equitable if it provides for a sale of the secured claimant's collateral subject to §363(k), with the lien attaching to proceeds of sale, <u>and</u> that the treatment of such liens or proceeds either complies with subsections (i) or (iii) of §1129(b)(2)(A). As an initial matter, the Plan does not provide for the sale of the Properties - rather it provides the Debtors with the option to sell the Properties. It also provides the Debtors with the option to refinance, which does not fall within the scope of subsection (b)(2)(A)(ii). Second, the sale option does not provide EWB with the right to credit bid as required under §363(k). Finally, as discussed below, the balloon payment, whether arising from a sale or refinance, does not provide EWB with the indubitable equivalent of its claim.

3. <u>The plan does not provide EWB with the indubitable equivalent of its claim.</u>

The United States Bankruptcy Court for the District of Oregon, in the case *In re Orchard Village Investments, LLC*, addressed the proposed treatment of a secured creditors claim, under which the creditor would retain its lien in the property, receive interest-only payments for three years, interest and principal payments for four years, and the payment of the balance of its secured claim in seven years, and found that such treatment did not provide the creditor with the indubitable equivalent of its claim. *In re Orchard Village Investments, LLC,* 2010 WL 143706 *17-18 (Bankr. D. Or., 2010). In reaching its conclusion, the *Orchard Village Court* relied, in part, on Judge Learned Hand's decision which originally set-forth the concept:

> [P]ayment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears for the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 14

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 14 of 20

*Orchard Village*, 2010 WL 143706 at *18, quoting *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir.1935). The treatment afforded the secured creditor in *Orchard Village* was, in fact, superior to that offer to EWB under the Plan, in that the creditor was to receive some reduction in principal over the life of the plan. Here, EWB is bearing the entire risk that the Debtors will be unable to pay their principal when the balloon comes due. As recognized in *Orchard Village*, such a proposition is not the indubitable equivalent of EWB's secured claim, as the future value of the Properties is entirely speculative. *Id.*4.

    4.    <u>The Debtors improperly propose to negatively amortize EWB's claim.</u>

Provisions which negatively amortize a claim are "highly suspect when evaluating a plan's compliance with the cramdown requirements." *In re Club Assocs.*, 107 B.R. 385, 398 (Bankr. N.D. Ga. 1989). Although the Debtors propose to pay 5.25% interest on Class 5 notes, they propose to pay "equal monthly installments of $34,500 per month." As of June, 2013, the appraised value of the Properties was approximately $8,580,000. *See* Declaration of Nancy A. Dawn [Dkt. No. 199]. While the Debtors propose a hearing to value EWB's secured claim, they have offered no alternative value. Assuming a 5.25% rate of interest, which EWB does not concede is appropriate, the interest-only payment would be $37,537.50/month. Simply put, while the Debtors characterize the payment and "interest and principal" they propose to pay an amount insufficient to even cover interest. To the extent the Debtors seek to amortize EWB's claim, the payments should be sufficient to cover interest accrual during the plan term.

    5.    <u>The proposed balloon payment treatment transfers too much risk to EWB.</u>

As discussed in more detail below with respect to feasibility of the Debtors' proposal, the Debtors plan amounts to gambling with EWB's collateral. Over the next five years, EBW will not receive any principal pay-down. Instead, the satisfaction of

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 15

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 15 of 20

EWB's claim will be entirely dependent on the Debtors' speculations as to the future real estate and lending environment. Meanwhile, EWB's cash collateral will be used to pay other creditors, such as the Debtors' counsel. If the Debtors' speculations prove incorrect, it is EWB that will bear the harm. Such treatment does not satisfy 11 U.S.C. §1229(b). *See, e.g., In re Grogan,* 20113 WL 1788024 (Bankr. D. Or. 2013) (proposed balloon payment after ten years transfers too much risk to be fair and equitable).

    C.    <u>The Debtors cannot Establish that the Plan is Feasible.</u>

The Plan does not meet the feasibility requirements of 11 U.S.C. §1129(a)(11) in that there is no evidence to establish the requisite probability of success, nor is the balloon payment fair and equitable for the purposes of §1129(b). The Debtors' Plan calls for refinance of the Properties, and if that fails, a sale at a price that would, presumably, pay the principal balance of EWB's secured claim. In essence, the Plan is a "balloon payment" Plan, with the probability of success hinging on the value of the Properties increasing such that a sale or refinance can occur five years in the future so that EWB's secured claim can be paid.

Such balloon payment proposals generally raise court scrutiny and skepticism that such a plan merely allows debtors to postpone the inevitable and gamble creditors' collateral on a long-shot improvement in values. *See, e.g., In re M & S Assocs., Ltd.*, 138 B.R. 845, 851–52 (Bankr.W.D.Tex.1992) (debtor's proposed balloon payment in four years of remaining debt secured by apartment complexes was characterized as an unfeasible gamble "on the long shot possibility of a drastic improvement in the real estate market."); *In re Griswold Bldg., L.L.C.*, 420 B.R. 666, 703–705 (Bankr. E.D. Mich. 2009). *See, also, In re Grogan*, 2013 WL 1788024 (Bankr. D. Or. 2013) (finding that balloon payment plan dependent on future financing not feasible). In *Grogan*, in addressing a plan that called for a balloon payment after ten years, the Court noted that feasibility "requires credible evidence proving that obtaining that future financing is a reasonable likelihood." *Grogan*, 2013 Wl 1788024 at *8. Here, the Debtors have provided <u>no</u> evidence that a refinance is

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 16

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 16 of 20

likely in 5 years.

What the Debtors seem to hope is that in five years they will convince a lender to refinance their debt so that they can pay their creditors and hold on to their assets. In the meantime, the Debtors will make no reduction of EWB's claim, as the proposed payments are not even sufficient to service accruing interest. Accordingly, the <u>only</u> potential for success is if the value of the Properties increases significantly. Even a flat or moderately positive market will not render the plan feasible.[6] It is easy for the Debtors to gamble on this potential, in that there are no additional consequences if they are wrong. EWB, on the other hand, bears the risk of a downturn specific to this business, or the market in general.

The Debtors' own projections highlight the risk that EWB is asked to take under the Plan. Attached to the Plan, as Exhibit C, are the Debtors' projections for the next five years of operation. Per the Debtors, the projected net cash flow in 2019 is $792,209, before debt service and taxes. Assuming, for the sake of argument, that the Debtors have guessed correctly, which is in-itself a legitimate question, this net cash flow suggests that the Properties could be worth approximately $7,900,000 in five years.[7] The Debtors may argue that questions about capitalization rates, etc. should be addressed at an evidentiary hearing, but such argument misses the point - this Plan does hinge on the current value of assets. Rather, it requires speculation about the value of assets years in the future. The fundamental problem is that nobody knows, with any degree of certainty, what capitalization rates will be appropriate or what the level of demand for hotels in SeaTac will be in five years, and opinions on the subject are about as useful as opinions on what team is going to win the World Series in 2019. What <u>is</u> certain, however, is that there is real risk of values declining, and

---

[6] Assuming a present value of $8.5 million, the value of the Properties would need to increase to approximately $12.1 million to achieve a loan-to-value ration of 70%
[7] In an appraisal of the Properties, Cushman & Wakefield opined that the best method of valuing the Properties was an income approach, and that a capitalization rate of 10% was appropriate. Declaration of Nancy A. Dawn, Exhibit A, Part 4, pp. 8, 51. Using a 10% capitalization rate, the value of the Properties would be approximately $7.9 million, before costs of sale.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 17

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 17 of 20

that EWB is being asked to bear this risk without even the potential mitigation that would offered by a significant principal pay down over the course of the Plan. Simply put, the Debtors cannot offer evidence as opposed to mere guesses, as to the feasibility of this Plan.

D. The Plan Violates the Absolute Priority Rule of §1129(b)(2)(B)(ii).

The absolute priority rule prohibits the Debtors from retaining non-exempt estate property without paying unsecured creditors the full amount of their claims. The absolute priority rule, requires that "a dissenting class of unsecured creditors ... be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988) (*quoting Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388, 401 (8th Cir.1986)).

The Debtors attempt to circumvent the absolute priority rule using the "new value" exception. The Debtors propose that the current owners will provide a line of credit of $500,000 and equity contribution of $100,000.[8] Although this full $600,000 is defined as the "Owners Contribution" for plan purposes, the real amount of new value is the $100,000, as a loan is not "new value." *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 899 (9th Cir. BAP, 1994).

In order to take advantage of the new value exception, equity must ?Former equity owners were required to offer value that was 1) new, 2) substantial, 3) money or money's worth, 4) necessary for a successful reorganization; and 5) reasonably equivalent to the value or interest received. *In re Bonner Mall Partnership*, 2 F.3d 899, 908-9 (9th Cir., 1993). In order to establish the latter prong, the Debtors bear the burden of showing that the new money offered is the most and best reasonably obtainable after some "market testing." *In re NNN Parkway 400 26, LLC*, 505 B.R. 277, 283 (Bankr. C.D. Cal, 2014). In the words of the *NNN Parkway 400 26* court, "[t]his probably

---

[8] The Disclosure Statement states the Conservatorship Court must approve the "new value" infusion, however in deposition, Mr. Seibert testified that he now does not believe he needs court-approval, and does not intend to seek it. Neu Decl. Exh. A at 47:15-48:6.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 18

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

requires, at a minimum, demonstration of a systematic effort designed to "market test" the deal." *Id.* An appraisal or expert's opinion as to the value cannot alone satisfy the "market testing." *Id.*

In deposition, the Mr. Seibert testified that the equity interests were not marketed, and that the Debtors have not had the equity interests valued or appraised. Instead, the $100,000 dollar figure was more-or-less pulled from thin air. [Citation]. Accordingly, the Debtors have not met their burden of persuasion with respect to the requisite showing that the new value is reasonably equivalent to the value equity is receiving Moreover, the figure is neither "substantial" or nor is the new value "necessary" for an effective reorganization. Based on the amount of debt, the "new value" constitutes less than 1% of the obligations owed creditors, and it is immaterial from a plan perspective. The new value is insufficient to create enough equity to make the plan feasible without the significant gains in the real estate market discussed above, nor does it provide sufficient working capital, therefore necessitating the line of credit. Therefore, the Plan violates the absolute priority rule.[9]

## V. CONCLUSION

As set-forth herein, the Debtors have not fulfilled the requirements of 11 U.S.C. §1129 with respect to the Plan, and confirmation of the Plan should be denied summarily so that EWB may proceed with its state law remedies.

---

[9] The Plan provides that in the event the Court finds that the new value exception has not been satisfied, the current equity owners will "surrender their stock" and receive nothing on account of the plan. Under California law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." Cal. Corp. Code § 16101. Debtors provide no authority to suggest that a partnership can exist without partners.

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 19

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 19 of 20

DATED this 6th day of June, 2014.

K&L GATES LLP

By /s/ David C. Neu
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA #42088
Attorneys for EastWest Bank

EASTWEST BANK'S OBJECTION TO CONFIRMATION
OF DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION DATED MAY 12, 2014 - 20

K:\2037501\00082\20347_DCN\20347P27S5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 12-13263-TWD    Doc 238    Filed 06/06/14    Ent. 06/06/14 16:26:44    Pg. 20 of 20